UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| APPLIED MACHINERY RENTALS, LLC, | ) ) | CASE NO.:  23-30461 |
| | ) | CHAPTER 7 |
| Debtor | ) ) | |
| | ) | |
| COLE HAYES, CHAPTER 7 TRUSTEE | ) | |
| FOR THE BANKRUPTCY ESTATE OF | ) | ADVERSARY PROCEEDING |
| APPLIED MACHINERY RENTALS, | ) | NO.:  25-03068 |
| LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURKETT BURKETT & BURKETT | ) | |
| CERTIFIED PUBLIC ACCOUNTANTS, | ) | |
| P.A., | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF TRUSTEE'S MOTION FOR
LEAVE TO AMEND COMPLAINT**

During the March 11, 2026 video hearing on the Trustee's Motion for Leave to Amend [Doc. 31], this Court raised *sua sponte* the question of the validity of assignment by Woodforest National Bank ("Woodforest") of its negligent misrepresentation and third-party beneficiary of contract claims against Burkett CPAs that the Trustee seeks leave to pursue.  The Court requested supplemental briefing on two issues:

1.     Whether the assignment of a negligent misrepresentation claim and third-party beneficiary of contract claim by Woodforest to the

Trustee was valid, such that the Court had subject matter jurisdiction over the assigned claims; and

2. Whether the choice of law principals set out in *In re BuildNet*, 2004 WL 1534296, \*9 (Bankr. M.D.N.C. 2004) were correct and whether North Carolina's or South Carolina's substantive law governed the issue of validity of the assignment of claims by Woodforest.

As to those questions, because Woodforest's assignment of claims to the Trustee is valid under either North Carolina or South Carolina substantive law, the choice of law as between the two is immaterial and the Court need not reach the question of whether *BuildNet* is a correct application of the law.  That said, if the Cout is inclined to reach the choice of law question, North Carolina substantive law would apply to the assignment given the choice of law provision embodied in the parties' agreement.

I. **North Carolina Permits Assignment of the Negligent Misrepresentation Claim Proposed by the Trustee.**

 a. **Under North Carolina law, the proposed assignment of the negligent misrepresentation claim is permitted because the Trustee is not a stranger to the dispute bent on officious intermeddling.**

At common law, courts limited the ability to assign certain claims out of concern for champerty, the "officious intermeddling" in a lawsuit belonging to another to gain "some profit growing out of it." *Smith v. Hartsell*, 150 N.C. 71 (1908).  The common law rule was "intended to prevent the interference of strangers having no pretense of right to the subject of the suit, and standing in no relation of duty to the

2

suitor[,]…to prevent traffic in doubtful claims…otherwise than as purchasers of the profits of litigation." *Id.*

Even in 1908, the North Carolina Supreme Court observed that the common law rule "has been very much relaxed and modified under the more recent decisions." *Id.* In *Smith v. Hartsell*, the Court held that assignment is not barred unless it is actually champertous. In other words, "unless the interference is clearly officious and for the purpose of stirring up strife and continuing litigation." *Id.*; *see also Haarhuis v. Cheek*, 261 N.C. App. 358, 365 (2018); *Wright v. Commercial Union Ins. Co.*, 63 N.C. App. 465, 469 (1983) (same).

Assignments are not champertous, and are permitted, where "a party either has, or honestly believes he has, an interest, either in the subject–matter of the litigation, or in the question to be determined." *Id.* If a party has such an interest in the subject-matter of litigation, "he may…in order to strengthen his position, purchase the interest of another party in addition to his own." *Id.* The rule against assignment of claims was thus "confine[d] to strangers who, having no valuable interest in a suit, pragmatically interfere in it for the improper purpose of stirring up litigation and strife." *Id.*; *see also Oliver v. Bynum*, 163 N.C. App. 166, 170 (2004); *Lau v. Constable*, 2022 WL 2704283, \*5 (N.C. Super. July 11, 2022).

Consistent with *Smith v. Hartsell*, North Carolina courts have more recently noted that "under modern law, assignability is the general rule and nonassignability is the exception." *Atlantic Coast Mechanical, Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 343 (2006). The Fourth Circuit

3

similarly stated that "it is a matter of common knowledge that the whole development of modern law has been in the direction of the freer assignability of choses in action. And we think the Supreme Court of North Carolina has recognized and followed this trend." *American Surety Co. of N.Y. v. Baker*, 172 F.2d 689, 691 (4th Cir. 1949).

The Fourth Circuit cited the North Carolina Supreme Court's decision in *Atlantic & N.C. R. Co.*, where it was specifically held that "[a]ll things in action which survive and pass to the personal representatives of a decedent creditor as assets" were assignable, including "those arising from torts to real or personal property, and from frauds, deceits, and other wrongs whereby an estate, real or personal, is injured, diminished, or damaged." 147 N.C. 368 (1908).

Woodforest's assignment of claims to the Trustee is permissible, and is not champertous, for several reasons. First, the Trustee is a Court officer with a fiduciary obligation to the Debtor's bankruptcy estate and who pursues claims for the benefit of creditors of that bankruptcy estate. The Trustee took assignment in furtherance of that fiduciary duty, not from a personal profit motive. Second, the Trustee already had an interest in the subject-matter of the claims and in the legal issues presented by those claims when he took assignment. The Trustee already brought claims on behalf of the bankruptcy estate against Burkett CPAs based on the very same negligent work product that Woodforest relied upon. He was no stranger to litigation over Burkett CPAs' work.

Third, the Trustee took assignment of Woodforest's claims in order to strengthen his pending litigation against Burkett CPAs consistent with the Fourth

4

Circuit's holding in *In re Bogdan*, 414 F.3d 507 (4th Cir. 2005).  In *Bogdan, in pari delicto* was raised in defense to the Trustee's claims.  But the Fourth Circuit held that "unconditional assignments acquired by Bogdan's trustee from the mortgage lenders" could be pursued by the trustee and that *in pari delicto* "has no application in this adversary proceeding because the trustee is suing on behalf of the estate as assignee of the mortgage lenders."  *Id.* at 513-514.  Burkett CPAs have indicated their intent to raise *in pari delicto* as a defense in this litigation.  Although the Trustee does not believe that *in pari delicto* bars any of his claims, the Trustee's claims as assignee of Woodforest are categorically not subject to that defense.

> **b.     Woodforest's negligent misrepresentation claim is an "Economic Tort," not a "Personal Tort" and is thus assignable under North Carolina law.**

Even if the Trustee were a stranger to this dispute, the claims at issue are not "personal tort" claims that some courts have held are not assignable per public policy to discourage champerty.  *Horton v. New South Ins. Co.*, 122 N.C. App. 265, 268 (1996).

It is not correct to say that "torts" are not assignable while "contract claims" are.  Were that the case, there would be no need to reference the limited category of "personal torts," rather than "torts" in general.  Under North Carolina law, these "personal torts" have been limited to "defamation, abuse of process, malicious prosecution or conspiracy to injure another's business, unfair and deceptive trade practices and conspiracy to commit fraud."  *Id.*; *see also Investors Title Ins. Co.*

*v. Herzig*, 330 N.C. 681, 688 (1992); *In re Welch*, 494 B.R. 654, 660 (Bankr. E.D.N.C. 2013) (providing same list of "personal torts").

Negligent misrepresentation has never been categorized as a "personal tort." Instead, "personal torts" are those for "personal injuries and for wrongs done to the person, the reputation, or the feelings of the injured party, [] those for breach of contracts of a purely personal nature, such as promises of marriage," *Atlantic Coast Mech., Inc.*, 175 N.C. App. at 343, or arising out of a "special relationship of trust and confidence." *Horton*, 122 N.C. App. at 269. The negligent misrepresentation claim assigned by Woodforest does not fit that mold.

In *American Sur. Co. of N.Y. v. Baker*, the Fourth Circuit held that North Carolina law permitted a railroad corporation to validly assign its conversion tort claim against a packing company for loss of a large number of hogs. 172 F.2d at 692. That claim belonged to a corporate entity and was for monetary damage to "personal property." *Id.*

In *J & B Slurry Seal Company v. Mid South Aviation*, plaintiff brought "negligence and contract claims" against defendant after plaintiff's airplane disappeared while in defendant's custody. 88 N.C. App. 1, 10 (1987). Plaintiff had assigned all claims relating to the airplane loss to its insurer, but only up to the amount of the insurer's payment ($600,900). *Id.* at 11. The Court of Appeals was required to determine whether plaintiff's assignment of its negligence claim to its insurer was valid and, if so, whether plaintiff's claims should be dismissed if plaintiff was no longer the real party in interest. The Court held that plaintiff's negligence

6

claim was validly assigned to its insurer and ordered that the insurer be joined as a necessary party. *Id.* at 15-17.

The above decisions found that North Carolina law permitted assignment of tort claims (conversion and negligence) held by a corporate entity. Two recent decisions from the North Carolina Business Court explain why those tort claims were validly assignable: they were "economic torts" of a corporate entity, not "personal torts."

In *Lau v. Constable*, Vent Tech brought tort claims against its former president for "constructive fraud, breach of fiduciary duty, conversion, unjust enrichment, constructive trust, and civil conspiracy" all arising out of the former president's involvement in misappropriation of corporate funds that reduced the value that Vent Tech received for the sale of its assets to VL Acquisition. 2022 WL 2704283, *1, 3. The former president argued that Vent Tech's tort claims should be dismissed because all such claims were assigned by Vent Tech to VL Acquisition in the contract for the asset sale, such that Vent Tech was not the proper party in interest. Vent Tech argued that its tort claims were not assignable. *Id.* at *4.

The Business Court explained North Carolina's liberalization of its rules on assignment and noted that "where assignments have been held to be void as violative of [] public policy, the facts have involved [] personal injury, typically in the form of bad faith claims against insurers for allegedly mishandling the personal injury claims of their insureds," and courts have focused on "the personal nature of

7

the injury…" *Id.* at *6. The Business Court drew a contrast between examples of "personal torts" and the "economic torts" at issue in *Lau*:

> The claims in *Horton* resulted from defendant insurer's bad faith refusal to settle personal injury claims brought against Horton, its insured, by the driver of a car who was involved in an accident. Given the facts, including the special relationship of trust and confidence between the insurer and the insured, the Court of Appeals held that the claim for breach of fiduciary duty is personal.
>
> In contrast, the claims here result from economic harms Martin allegedly inflicted on the Company, not from personal injuries suffered by an individual. Vent Tech alleges that Martin misappropriated money himself, allowed Constable to do so, or both. The harm is to the Company's property, and no personal injury is at issue. <u>Thus, while the claims sound mostly in tort, they are distinguishable from the claims in *Horton*, *Terrell*, and *Charlotte-Mecklenburg Hosp. Authority* in that they involve alleged economic loss to a corporation and not physical injury to a person.</u>

*Id.* (emphasis added) (citing *Horton*, 122 N.C. App. at 268-269).

Consistent with *Lau v. Constable*, the Business Court confirmed this rule in *Vincelette v. Court*. 2025 WL 2161194 (July 30, 2025). Vincelette, the plaintiff, acquired a conversion claim against the defendant by assignment from a corporate entity, Wellspring Group. That conversion claim related to an "unauthorized transfer of $105,000 from Wellspring Group." *Id.* at *15. The Business Court found the assignment of that tort claim to be permissible, stating that:

> North Carolina courts have held that assignment of a tort claim involving economic loss to a company, as opposed to physical injury to a person, does not violate North Carolina's public policy prohibiting champerty.

*Id.* (citing *Lau*, 2022 WL 2704283, *6 and *J & B Slurry Seal Co.*, 88 N.C. App. at 10).

8

Each of the above cases show North Carolina's current rule that economic torts held by corporate entities are assignable. Those differ from "personal torts." The negligent misrepresentation claim the Trustee seeks leave to pursue, as assignee of Woodforest, is plainly an economic tort, not a personal tort. Accordingly, the assignment is valid under North Carolina law.

II.    **South Carolina Permits Assignment of the Negligent Misrepresentation Claim Proposed by the Trustee**

South Carolina law clearly permits assignment of the negligent misrepresentation claim. In a 2000 decision, the South Carolina Supreme Court "abolish[ed] champerty as a defense" under South Carolina law. *Osprey, Inc. v. Cabana Ltd. P'ship*, 340 S.C. 367, 381-82 (2000). The Court did so because "the doctrines of unconscionability, duress, and good faith," as well as modern rules providing sanctions for frivolous filings, "can more effectively accomplish the goals of preventing speculation in groundless lawsuits and the filing of frivolous suits than dated notions of champerty." *Id.* at 382.

Other South Carolina decisions illustrate that state's lenient, modern approach to the assignability of both contract and tort claims. In *Schneider v. Allstate Ins. Co.*, the Court held that "an action in tort against an insurance company for negligent, willful, or bad faith failure to settle within policy limits [was] assignable under the law of South Carolina." 487 F.Supp. 239, 241 (D.S.C. 1980). Similarly, in *Fowler v. Hunter*, 388 S.C. 355 (2010), the South Carolina Supreme Court upheld the validity of an at-faut driver's assignment of his professional negligence tort claim against an insurance agency to the injured not-at-fault driver.

9

Thus, South Carolina law permits Woodforest's assignment to the Trustee.

### III. The Trustee's Proposed Third-Party Beneficiary of Contract Claim is Contract-Based, and So is Assignable Under Either State's Law

The Trustee seeks leave to pursue an assigned third-party beneficiary of contract claim against Burkett CPAs. This claim is based on written contracts among the Debtor and Burkett CPAs where Woodforest was the intended beneficiary of those contracts. Burkett CPAs was primarily engaged to meet the financial reporting requirements imposed by Woodforest.

"North Carolina recognizes the right of a third-party beneficiary to sue for breach of a contract executed for his benefit" if the "contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651 (1991). Similarly, under South Carolina law, "if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." *Fabian v. Lindsay*, 410 S.C. 475, 488 (2014).

Since this proposed claim is based upon the existing contract among the Debtor and Burkett CPAs, and it is not a tort-based claim, it is assignable under both North Carolina and South Carolina law. In North Carolina, an action arising out of a contract can generally be assigned. *N.C. Bank & Tr. Co. v. Williams*, 201 N.C. 464, 466 (1931). In South Carolina, "[c]hoses in action ex contractu have always…been

10

assignable." *Schneider*, 487 F.Supp. at 243. Accordingly, Woodforest's assignment of a third-party beneficiary of contract claim to the Trustee is valid under either State's substantive law.

IV. **North Carolina law applies to the assignability of the claims at issue.**

For the reasons set forth above, the Court need not determine which state's laws apply to the validity of the assignment. Nonetheless, if the Court chooses to address this question, the Trustee submits that North Carolina law applies, and the assignment is valid as previously described.

In *Buildnet*, a non-binding, unpublished decision from another judicial district, the Bankruptcy Court for the Middle District of North Carolina offered two competing choice of law theories for determining the validity of an assignment of claims. The Court first suggested that, since an assignment of claims is a contract, the validity of that assignment is "presumed to be governed by the law of the state in which the contract was formed." *Id.* The *Buildnet* Court also noted that North Carolina law defers to a choice of law provision contained within a contract. 2004 WL 1534296, fn. 5.

The *Buildnet* Court stated that, based on the facts presented in that case, "an action arising out of contract" is assignable whereas "actions sounding in tort" are not assignable "whether the injury is to person or property." 2004 WL

11

1534296, *10.  Outside of the *Buildnet* facts, North Carolina decisions do not support *Buildnet's* broad pronouncement of the law.[1]

To illustrate, *Buildnet* cites only the *Horton* decision, 122 N.C. App. 265 (1996) as supporting its oversimplified holding.  While *Horton* did conclude that tort claims for bad faith handling of an individual's personal injury claim was not assignable as a "personal tort," as the Business Court explained in *Lau*, that conclusion was because of the personal nature of a personal injury claim and the alleged "relationship of trust and confidence" at issue.  122 N.C. App. at 269; *Lau*, 2022 WL 2704283, *6.

The Trustee's claims here are not based on any underlying fiduciary relationship, nor do they relate to a personal injury claim.  Instead, they are economic tort claims assigned by a corporate entity and relating exclusively to money damages.

With *Buildnet* properly framed, the Court can consider the choice of law in this case.  Woodforest's assignment of claims to the Trustee is a written contract and it states that it "shall be governed by and construed in accordance with the laws of the State of North Carolina."  "[C]hoice of law in contracts cases is governed by the

---

[1] In footnote 6, the *Buildnet* decision states:  "In contrast, under Delaware law the question of assignability of a cause of action depends upon whether the cause of action would survive and pass to the personal representative."  The Court states there that "most tort claims and bad faith actions are assignable" under that legal standard.  But *Buildnet* failed to recognize that North Carolina also adopted and applied the same standard in *Atlantic & N.C. R. Co.* 147 N.C. 368 (1908) ("All things in action which survive and pass to the personal representatives of a decedent creditor as assets" were assignable, including "those arising from torts to real or personal property, and from frauds, deceits, and other wrongs whereby an estate, real or personal, is injured, diminished, or damaged.").

It thus appears that *Buildnet* incorrectly attempted to distinguish Delaware law (where the tort claim assignment would have been permissible) from North Carolina law.  Instead of a distinction, *Buildnet* should have concluded that North Carolina law utilized the same standard as Delaware.

rule of lex loci contractus (or, where the contract was formed), and choice of law in torts cases is governed by the rule of lex loci delicti (or, where the injury occurred)." *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 280 (4th Cir. 2014) (citing *Tanglewood Land Co. v. Byrd*, 299 N.C. 260 (1980) and *Boudreau v. Baughman*, 322 N.C. 331 (1988)).  Because the assignment was entered into by the Trustee in North Carolina and it contains a North Carolina choice of law provision, North Carolina law would govern the assignment's validity.[2]

Ultimately, the *Buildnet* decision assessed the validity of the assignment of claims under North Carolina substantive law because a North Carolina court "will not apply the law of a foreign state if it offends the public policy of the forum."  2004 WL 1534296, *9.  That public policy exception to choice of law rules is limited to issues of "prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor." *Clifford*, 2005 WL 2313907, *9 (quoting *Boundreau v. Baughman*, 322 N.C. 331, 341-42 (1988)).  None of those limitations exist in this case, and as stated above, the assignments at issue here do not violate North Carolina public policy.

## Conclusion

For the reasons set forth herein, Woodforest's assignment of negligent misrepresentation and third-party beneficiary of contract claims to the Trustee is permissible, valid, and not champertous whether North Carolina or South Carolina

---

[2] As to which states' substantive law controls the actual claims added in the amended complaint, discovery will be necessary.  Burkett CPAs is a South Carolina entity.  Upon information belief, its principal place of business is in South Carolina and Burkett routinely reviewed documents at the Debtor's office in South Carolina.  The AMR Ponzi Scheme was orchestrated from North Carolina.  The conduct applicable to the negligent misrepresentation claim thus occurred in either South Carolina or North Carolina.

13

substantive law applies to the analysis.  The Trustee requests that the Motion for

Leave to Amend be granted.

    This the 1st day of April, 2026.

/s/ *Michael J. Parrish*

Michael J. Parrish
N.C. State Bar No. 38419
email:  docketCR@wardandsmith.com
email:  mjp@wardandsmith.com
Lance P. Martin
N.C. State Bar No. 027287
email:  docketCR@wardandsmith.com
email:  lpm@wardandsmith.com
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC  28802-2020
Telephone:  828.348.6070
Facsimile:  828.348.6077
*Counsels for Cole Hayes, Esq., Trustee*
   *for Applied Machinery Rentals, LLC*

14

**CERTIFICATE OF SERVICE**

I certify that this SUPPLEMENTAL BRIEF IN SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINT was filed electronically in accordance with the local rules and was served electronically on those entities that have properly registered for such electronic service.  Entities not registered for electronic service have been served by depositing a copy thereof in the United States mail, postage pre-paid.

Richard N. Sheinis, Esq.
Hall Both Smith
Counsel for Defendant
Served via CM/ECF

This the 1st day of April, 2026.

/s/ Michael J. Parrish
Michael J. Parrish
N.C. State Bar No. 38419
email:  docketCR@wardandsmith.com
email:  mjp@wardandsmith.com
Lance P. Martin
N.C. State Bar No. 027287
email:  docketCR@wardandsmith.com
email:  lpm@wardandsmith.com
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC  28802-2020
Telephone:  828.348.6070
Facsimile:  828.348.6077
Counsels for Cole Hayes, Esq., Trustee
    for Applied Machinery Rentals, LLC

15